May please the court. I had the pleasure of seeing my friend Jeff Wright who we've had many cases over the year and reminded him of the enjoyable professional experience we had together and suggested to him that he tell you that I'm the best lawyer he's ever been against and how much he'd enjoy retrying this case but I think he's going to decline that. But in all seriousness we were in complete agreement in the trial regarding instruction 14 and the need for it in this case. Without instruction 14 two facts are clear on the record. Ms. Wurster presented a submissible design defect case and the court refused to instruct the jury on her design defect claim. Iowa Civil Jury Instruction 1002 from the Pattern Instructions was the basis of our instruction 14. It's entitled Design Defect Essentials of Recovery. It's the only instruction submitted containing the essential elements of a design defect claim. Proposed instruction 14 was based on that pattern instruction. Now here's what Mr. Wright said at the instruction conference when Judge Woolley told us that he was declining to give instruction 14 but did plan to give instruction 15 which was an instruction putting forward the defenses to a feasibility utility etc as laid out in the Supreme Court of Iowa's Wright case. Here's what Mr. Wright said, Jeff Wright, I think really think that instruction number 14 has to be there to explain to the jury what a defectively designed product is. There's no way to know what is instruction 14 in large measure serves as the definition as adopted by Iowa of what a defectively designed product is. I'm standing here as sure as I am that 14 and 15 have to be there for the jury to understand what defectively designed product means or defectively designed gas can means and he was right. He was right. Judge Woolley declined to give the instruction and the only rationale that he gave either of us was that the Wright case which was a case that Judge Bennett had before him and given certified questions to the Iowa Supreme Court which asked what test should be applied in design defect case was a tobacco case and therefore was inapplicable here. He never explained his rationale beyond that because the the case although it arose in the context of a tobacco liability issue was really directed at a straight question of law to the Iowa Supreme Court about what are the elements of a design defect claim. What I want to know is how the instruction conference seemed to get off track because at one point you both seemed to agree that the instruction 14 should be given but then as I understand it you were very insistent that there be two instructions one that specifically used the phrase strict liability and Judge Woolley said it isn't strict liability it's negligence and you said you didn't want the instruction if it didn't say strict liability. As I read the instruction. I'm sorry. I'm sorry. I think that's out of context. I think that the issue was somewhat one of confusion. The instruction that we gave to the court 14, which we submitted, and he said we preserved our objection to not giving that instruction, didn't contain strict liability or the designation negligence. It's a design defect, as 1002 did. And Judge Woolley changed the instruction to read strict liability based upon what Mr. Wright had submitted in regard to the entire package. I thought that it had to be designated one or the other. All of this is completely oblivious to the Eighth Circuit standard, as the instructions as a whole. That's true. Barely apprise the jury of what its task is. And instruction number 12 says DPG was negligent in one or more of the following ways. A, design of its gas can. B, failure to warn. Yes. That's true. That gave the lawyers all they needed to argue a design, how the jury should approach deciding     All of this is completely oblivious to the Eighth Circuit standard, as the instructions as a whole. That's true. But, Judge, if . . . I don't care about all of this. These pages and pages in Wright and all the other Iowa cases, massaging to death the articulation of these legal concepts. I can understand the Court's point. But if you look at our instruction 14, that's part of the record. We submitted the elements of what a design defect was. And the instruction laid out what we were claiming the defect was in number three of our submitted instruction. And we said the product was in a defective condition at the time it left defendant's control in one of more of the following ways. We said that the gasoline container was not equipped with flame arresters . . . I'm looking at 14 in Addendum 17, and I'm not seeing what you're reading. It's not on your page. Well, Judge, I'll give you the reference in a 28J letter, but it's in our appendix. It's the proposed instruction 14 . . . I think it's at Addendum 10, actually. And the docket number is Document 179. And he's reading from three subdivisions, A, B, and C. The question is that you were allowed to argue all these things, and the judge instructed on design defect essentially said that that was something that the jury could find. And what's the magic of failing to point out what you already argued? Judge, the instructions carry much more weight than the argument of counsel, and the jury's And the instruction is patterned after 102, because it's important that the jury understand that the court believes the submissible case has been made on these points, and he ruled that it had been, that those are in fact defects based on the evidence that we presented . . . Instruction 12 says that. Instruction 12 . . . It says design defect is a submissible claim. Jurors don't handle the submissible stuff. That's what you argue with other lawyers and judges and law professors. Judge, I . . . I understand the court's point. I think that the drafting committee in Iowa was following the direction of the Supreme Court in the right decision that I gave you, that you must include all the elements of a design defect in order to submit such a case. And they say that. They say that it doesn't matter what nomenclature you use as long as the elements are stated, and that's found in right. And so that's why 1002.1 is drafted in this way to meet those requirements. Now . . . Yes, sir. Can I move to something else for just a second? Yes. I think that it's plain that what you're arguing here is that there are specific elements that weren't laid out, and it's not sufficient to say design defect. And  Judge Haddon said these are the elements. It's really error, and it's compounded by the fact that they gave the last part of it as the defenses without saying here's what we had to prove. That's right. I got that. All right. But what I'm a little bit maybe perhaps more concerned about is that it looks to me like unreasonable assumption of the risk is a species of fault which could be considered in comparative fault, which frankly in most states that's kind of how it's viewed since we've adopted comparative fault statutes. But apparently knocking around somewhere in Iowa is some theory that unreasonable assumption of the risk is also a defense. And so there's a body of law that says if you give both instructions that you're really giving somebody two bites at the apple. Yes. Now, it looks like if you were to take out the words that refer to this defense in the second instruction, that actually all you've got is it's listed as one of the species of fault that may exist in the comparative fault world, right, 13. And then if you look at, I forget, is it 18? Eighteen. Eighteen. And you look at 18, and then it says, and here's what it is. And it would all be okay but for this defense, which that's your argument. Coker. And is there, and that's a fatal flaw under Coker, you're saying, right? Yes. Why? Because it's two bites at the apple directing them towards fault of the plaintiff, which Coker says is a no-no. You can't do that because it gives one party an advantage over the other. And after all, we lost this case by five percentage points. It certainly does appear to be two bites at the apple, as Coker prohibits. And Judge, you're right. If he had just used that as a definition without the verdict directing tail to 18, perhaps the argument would be better placed and consistent with Coker. But it says if you find this, you know, it bars his recovery. And so I think it directly contradicts the direction of Coker that you ought not do that, that if you get contributory negligence, you don't get assumption of the risk. Here we have them mashed up and two different verdict directors saying that, in fact, his fault will bar his recovery in this instance. And so I think that that is a fatal flaw, one which we cautioned the court and asked him not to do, but he included it at Mr. Wright's suggestion. Because, I mean, you know, one of the things that Judge Malloy points out to us in the McGuire case is that despite the fact that we have the test for design defect as Wright says, as essentially the same test, there still is a difference between strict liability and negligence. And you point that out in regard to state of the art and the defense that it can be used against strict liability but not against negligence. And the same principle applies here in that assumption of the risk. If he really was talking about negligence as Mr. Wright says he was in this instance, then assumption of the risk shouldn't come into play in this way, in the way that he instructed on it. We have contributory negligence. Coker says that's enough, that's all you get. But 18 says if what is called assumption of risk, if TPG has proved all these propositions, then you will assign a percentage of fault against Worcester. Yes, you will. That's not. You will. It's not a comparative instruction. It tells you to do it. And likewise, 13 tells you to do it. And what we're saying, Judge. If the jury box listened to that, I'd say that was an instruction to do comparative fault. Okay. Well, maybe. I mean, Judge, you have a better understanding of law than most people and most jurors. I did. Well, except that they assigned him more fault than they did, and they got two instructions that told them to do that. And you can't discount that under the Coker decision, which says if you get contributory negligence, you don't get assumption of the risk. You see, I believe had the court given 14 as a product defect instruction and properly then given an assumption of the risk instruction separately from a contributory negligence instruction, that could have worked. But by mashing them all together, calling it negligence, then saying that contributory negligence has a component of assumption of the risk, just makes a mess of this. And the jury found, even despite all of these problems, that they failed to warn, but ascribed to him more fault than to TPG. I think that that's really a problem, and I point to it as the reason we lost. And that's illogical. Huh? It's certainly not illogical. Well, thank you, Judge. I mean, 55%. Well, perhaps, except that the facts of the case are no one knew what happened here. There was no fire in the burn barrel. Nobody understood what had occurred in these circumstances. But these cans explode for all kinds of reasons, independent of using them around fire. If there are sparks, if it's hot outside. The flame arrester that should have been in the can prevents all these injuries. Okay, all right. And I'm sorry that I got on that, except that that was central to the argument of why he shouldn't have received fault. So, do I have one more minute in my first half of the argument? Is that what I still have? One minute's coming down. In my total argument? Okay, Your Honor, then I'll save my last minute for rebuttal. Thank you. Mr. Wright. May it please the court? Mr. McClain. The one thing that Mr. McClain, we did agree on at the time of trial, and we didn't agree on much, was the importance from our perspective of instruction number 14. We did state, and I said exactly as he quoted, that we wanted 14, but for markedly different reasons than the plaintiff has articulated here today. Important to instruction number 14 that was left out, and why we had asked for it, and why we're in this unique situation we presently find ourselves, is instruction 14 actually included language about point of sale, and what the knowledge was at the time of the sale of this gas can, as far as whether the design was defective or flame arresters were needed. That was left out entirely in instruction 12, and so the plaintiff actually benefits from instruction number 14 not being there. It broadens the ability of the plaintiff to make the arguments that they made. Your Honor, I'm actually referring to instruction 14, which would be addendum 17, which was the instruction that ultimately, in our view, was adopted by the plaintiff in insisting upon strict liability. And paragraph three is a particular paragraph that is of importance, as is paragraph four. The gas can did not comply with the state of the art at the time of its manufacture. What is addendum 10, and what is addendum 17? They're both? Addendum 10 was the original proposed set of instructions from the plaintiff that were submitted in advance of trial at the time of the pretrial conference. Instruction 14, which is addendum 17, is the court's ultimate proposed instruction 14 that the court then ultimately elected not to give. We were interested in instruction 14, which is addendum 17, and I apologize for the confusion, because it pointed out that the plaintiff had to acknowledge of certain things and so forth at the time it left TPG's control. The gas can leaving TPG's control. Those were not present when instruction 14 was not given, and it was only instruction 11, 12, and 15 as the instructions that truly mattered for conveying the plaintiff's case. Through Mr. McLean's argument, the court hit on a couple of items that, this is the three part test, was the proposed instructions the correct statement of law? And did the scope of the instructions, even without that proposed instruction, cover everything that needed to be covered? Our position, as we've submitted in our briefs, is 11, 12, and the instruction 14, particularly true as it relates to what the plaintiff had to prove in this case. The plaintiff got design defect. The introductory paragraph of the instruction specified that there should have been a flame arrestor. Mr. McLean got to argue as long as he wanted a trial about flame arrestors being the necessary addition to this, or the necessary alternative design that would have reduced the, or avoided the foreseeable risks. The right case, Mr. McLean is correct, the right case says we don't necessarily care about labels as long as everything is there in the instructions. Let me tell you what my concern about the instructions are. You just used the word foreseeable risk. In instruction number 13 that was given, one of the elements of fault, of contributory fault, was misuse of the gas can by pouring gasoline on the fire. And assuming the jury found that, and I think we've taken the evidence to light and we'll say we'll go to the verdict, let's assume they found that. Is it not true that under Iowa law, you have to protect against foreseeable misuse of a product? That's true. And is not directly pouring gas to start a burn barrel something that probably half the farmers in Iowa do? And it would be a foreseeable risk that a farmer's going to use a gas can and pour gas directly on a burn barrel to get it going? That's all absolutely correct. And the Comparative Fault Act is what deals with that. Where do you tell the jury that misuse of the product can be a foreseeable risk? It talks about misuse of the product as being comparative fault, but it never talks about the duty of, it just talks about foreseeable risk. It does not talk about misuse being a foreseeable risk. And I appreciate your comment and your concern. The plaintiff was allowed to argue misuse. And the plaintiff did argue, if that is the use and it's deemed a misuse, that that is still something that needs to be dealt with. The plaintiff argues at length that instruction number 14 should have been given for that purpose. Instruction number 14, that was the only argument that they made as it related to the instructions, that said that instruction 14 should have been given to deal with foreseeable misuse. Instruction number 14, which is at addendum 17, says nothing of foreseeable misuse anywhere in it. It only talks about foreseeable risks of harm posed by the gas can, the broad scope of that. I saw that and I was wondering, in none of the proposed instructions did anybody say, well, it would have been the plaintiff who would have asked for it, did they say foreseeable risk includes misuse? Not that I recall. Not that I recall. And, of course, the Comparative Fault Act deals with the misuse part of all of this by saying that misuse of a product that would otherwise make a defendant liable deals with foreseeable misuse. If it's unforeseeable misuse, the product's not defective by definition. And so there's some cases that predate the Comparative Fault Act that deal with, I think they cited the Hughes case and the Henkel case, but all of the issues are dealt with actually by the instructions in the Comparative Fault Act because misuse of a product that would otherwise make a defendant liable defines it as foreseeable misuse. Now, we submit that the instructions certainly covered all of the issues that the plaintiff needed or cared about relative to design defect. I already explained that the plaintiff was able to argue that the foreseeable risk existed in the nature of flashback explosions from people pouring gas on fires, that flame arrestors, which is the alternative design, were a known reasonable alternative that would have addressed the foreseeable risk, and omission of the flame arrestors rendered the can not reasonably safe. The Wright case, as I mentioned a moment ago, says, as long as everything is there, we don't care about the label, but we don't want strict liability to be the label. All we want is that all of the elements are there. And we'd submit that these instructions included all of the elements, explain reasonableness, explain to the jury and advise the jury about foreseeable risk, and the seminal question that really is the answer shows up in Instruction 15. The first sentence of it explains to the jury that a reasonable alternative design could have made the product safe and its omission made the gas can unsafe. That's the real question that they had to answer. Are you aware of any cases, either one way or the other, that say, in essence, the instructions are okay as long as everything is in the instruction, but there's no marshalling instruction that sort of ties it all together? Because that's essentially what they're arguing here, is that pretty much everything they wanted you could find somewhere in the instructions, but you don't have a marshalling instruction to tie it all together, which would have been Instruction 14. I'm afraid I can't cite you a case by name and citation other than to say the cases are legion from this court that say, if everything is there, it's dealt with. And I would submit that Instruction 12 is the marshalling instruction. It says you're negligent if the gas can was defectively designed, which is essentially, I'm not getting it exactly right, but 12 dealt with it and made design of the can a negligent act, and then Instruction 15 tells the jury how to figure out if the can was negligently designed. Because remember, defective design is now evaluated as a negligence theory. Is COCR a problem? I don't think so. And the only reason I hesitate is because COCR says exactly what Mr. McLean said, that in a negligence case, you're not to give assumption of the risk. But here's what's important about COCR. It's not a products case. And this is a products case. And the case law in Iowa dating back to 1989 has said that assumption of the risk is a part of the comparative fault analysis, and it's there for the purpose of products liability, whether submitted as strict liability or negligence. It seems to me that, and I'm not completely conversant in Iowa law, obviously, but most of the law that I've dealt with in my career, Minnesota and North Dakota, has always looked at assumption of the risk as a species of fault. And so if you're going to compare faults, you can figure it in there. It can be argued that when you undertake to engage in conduct that faces an open, obvious risk, and you go forward, that some fault is attributable as a result of that. And so it seems to me that if you look at this instruction as a whole, that's not a problem, except to the extent where in Instruction 18, the judge said to prove this defense. And that seems to me clearly like an erroneous statement of the law, that it's no longer a defense. What it is, it's just part of the body of comparative fault law. And so in COCR, they say, well, you can't give them two bites at the apple. I'm trying to figure out how do we, is the only way that we can distinguish COCR is to say, yeah, this is a products case? Well, it's not the only way. And so there's two parts to my answer to your question. First of all, COCR isn't a products case. And since the time of COCR, the Leaf v. Goodyear case, 590 Northwest 2nd, 525, a 1999 decision, was a defective design of a tire case in which assumption of the risk was apparently instructed and approved by the Iowa Supreme Court. And so since the time of COCR, assumption of the risk has been a defense. Now, as it relates to the court's question regarding if they've proven this defense, first of all, the instruction is go to the comparative fault analysis. The second part of it... Yes. Leaf, L-E-A-F, v. Goodyear? Did you find it? Great. The other part, as I was mentioning, dealing with if this defense is proven at the risk of not giving jurors enough credit, they're just instructed to go to the same place that they're supposed to go to to make a comparative fault analysis. I can appreciate, as we're sitting here and say, the nomenclature of defense, this defense versus that defense, and it's an extra defense. I think we're giving the jury more credit than we ought to about knowing and appreciating that. I get that, because we're all stuck someplace in the common law in about 1880 and someone says assumption of the risk, and it's a complete bar. And it may be that when we say this defense, as lawyers, we all draw back and say, hold on, wait a minute. It's not an absolute defense. The jury undoubtedly doesn't know what the difference is between comparative fault and an absolute defense in any event. All they know is what we tell them. And I think that's accurate. And it doesn't say, dear jury, if you find this, it's an absolute defense, find for the defendant. It only says go to the Comparative Fault Act and allocate fault as you deem appropriate. You made the comment that the jury only knows as much as we tell them, and I think that that's important as it relates to Instruction 18. Assumption of the risk is a bit of a loaded term in the law, and they needed to know what that meant. And I appreciate, Judge Erickson, I think it was your question, it's like, well, if this defense is proven and it highlights something, and my comment back to that is, I don't think it does for the primary reason that it just sends the jury to the place that they've got to go to assign comparative fault. It doesn't do anything to create anything broader than that. Let me ask you something I found a little confusing. The comment to the Iowa Model Jury Instruction 400.9 says that assumption of risk is not to be instructed as a separate defense in comparative fault cases under Chapter 668, but then goes on to say it is a defense in strict liability, but strict liability is under 668, is it not? Strict liability is under 668? That seemed to me to be a somewhat circular comment that doesn't entirely make sense to me. And I'm wondering if maybe that comment is a little bit antiquated based on the evolution of the law and the formal adoption of true negligence standards for design defects. All the way back, I think all the way back to 1978, design defect was truly a risk-utility, reasonableness standard test, and that permeates throughout all of this and all of the arguments both on the design defect instruction and on the assumption of the risk instruction. All of these cases talk about products liability, strict liability, and products liability being both negligence and strict liability. We're now to a point where it's evolved to just being negligence, and the statute hasn't changed and the case law hasn't changed to say that those should not be, that assumption of the risk shouldn't be given or that the instructions that were given in this case were insufficient relative to design defect. And I see my time is up. Thank you all for your time. Thank you, counsel. Complaints or rebuttals? Yes, Judge. Addressing Judge Malloy's point, we addressed the misuse issue in the way that the cases told us to address it, which is in Instruction 14, Numbers 5 and 6. If you look at Leif, that he just quoted to you, Leif says, and this is quoting Leif v. Goodyear, Leif says the issue is not whether there was misuse by running it flat or uninflated, but whether such misuse was reasonably foreseeable to Goodyear. This foreseeability inquiry should rarely be determined as a matter of law, and it goes on. But it cites, then, another case, Smith v. Air Feeds, which says that a manufacturer must anticipate the nature of the environment in which the product will be used and design against the foreseeable risk attending the product use in that setting. Thus, if an alteration can be anticipated or controlled by the manufacturer or the particular use of the product is foreseeable, liability may be imposed. And so those two elements of 14 in the pattern instruction, the citations are, that's what they're for. So we did not submit a separate instruction. We thought the pattern instruction was the safest way to go to submit such an issue to the jury, and that's why 14 is necessary. 15 does not make that clear. And, yes, it's possible to argue anything, but the reality as a trial lawyer is that the instructions guide the jury home, and arguments are never as persuasive as instructions, in my view. Not including 14 was an error in this instance, and we think we deserve a new trial. Thank you.